Crespin v. Evans and Mr. Hughes, whenever you're ready, we'll hear from you. Take your time. Thank you, and may it please the Court, Paul Hughes for Petitioner Crespin. Section 1226, not Section 1231, governs petitioner's detention. I'd like to begin with three initial points. First, per the plain text of the statutes, the statutes turn on whether the government has actual authority to remove the individual from the United States. We've got two cases, two different circuits, two different ways on it. One's supporting 31, the other one supporting 26. It looks like to me someone's already thought this thing through. Which one should we go with, unless you want to add something to those opinions? Well, Your Honor, we submit that the Second Circuit was correct about this case, and we think one of the fundamental issues is the statutory construction, which is what's the dividing line. That dividing line we submit is that 1226 applies before the government has final authority to remove, actual authority to remove. Section 1231 applies. When you read it, it looks like 31 applies. Then you, Second Circuit, you follow their reasoning. Well, that kind of sounds like the way it is. And then Ninth Circuit comes behind it, and then it goes a different way. Then it analyzes the Second Circuit opinion with some pretty strong points there. It almost makes it compelling to say, well, maybe the Ninth Circuit got this thing right. Well, Your Honor, first, there's a rehearing petition that's currently pending in the Ninth Circuit that's not been adjudicated. The Ninth Circuit's asked for the government's response. They received that about a month ago, and the Ninth Circuit has yet to rule on that. So that is still outstanding. But, second, the fundamental problem with the Ninth Circuit's decision is it turned on this view that the ‑‑ it thought that individuals in these circumstances don't fall within 1226 because it said the decision as to whether or not they are to be removed has already been made. That's just simply inaccurate. Individuals in these circumstances, the very proceedings are adjudicating whether or not they will be removed. The Ninth Circuit looked to the possibility that there could be ‑‑ Whether they'd be removed or where they're going to be removed. But that's precisely the issue, Your Honor. In order to say that the government has authority to remove an individual, the government must identify the country to which the government seeks to remove the individual and then go through the process. At page 45 of the government's brief ‑‑ Let's get more fundamental. I mean, it's a ‑‑ You look at 1226. And to relate it to the criminal structure, it looks like it's detention pending a hearing on determining whether the person is going to be removed. It says, arrest, detention, and release. And it says, be arrested and detained pending a decision on whether the alien is to be removed from the United States. So that sounds like pretrial detention, 26, just going there. Now, we can go to the details. 1231 says just the opposite. After there has been an administratively final order of removal, then they can be detained under 1231. It's post detention, a post trial detention. Now, that's the generality of it. This case is complicated, of course. There was a final removal order. He was removed. The order was executed. And then he came back. And the removal order was reinstated under 1231A5. So, structurally, it seems to me you start off with a very tough case because one, pretrial detention. The other is post trial detention. And you can go to the details of them. But to make a mesh seems to me is the task for the statutory interpretation. Well, Your Honor, I respectfully disagree with that structure. Well, I know you disagree because that's your standing there. Your Honor, and our submission is that the structure is quite simple. The structure turns on does the government have actual authority to remove this individual. That's confirmed by the text of both 1226. Wait. Where's the text of that? How does that lead to anything? In other words, there has been a final order removal originally, right? Yes, Your Honor. He left. Yes, Your Honor. He was found back in the United States in 2016, right? Yes, Your Honor. At that point, the original removal order was reinstated, right? Yes, Your Honor. All right. So, there is an order removal. There's no question of whether they have authority. He has. He's subject to a final order of removal right now. No, Your Honor. There is a very substantial question as to whether or not there's authority to remove. Because for authority to remove, the government actually has to have a particular country to which they can remove the individual. And if I can focus on 1231, that might help. You're sort of just bypassing, blowing out the fact that there's a final order removal in place. Well, no, Your Honor. Why is there any question about the government's authority? No, Your Honor. The question is can the government actually remove this individual? And the answer is no. They cannot remove this individual today. The question is whether they can deport him to some place. But he is subject to a final order of removal at this point. But, Your Honor, Section 1231 focuses on actual authority to remove. And that's clear in the text of the statute. Section 1231A1A explains that during the removal period, the Attorney General shall remove the individual. And it provides a 90-day period because that's the period that Congress thought, in normal circumstances, and sometimes it takes longer than normal circumstances, to do the procedural steps of things like obtaining travel documents and arranging for travel. Section 1231A1B provides the triggering events that all go to actual authority to remove, the kinds of things that the government needs in order to put somebody on a plane to physically remove them from the United States. As we pointed out in the briefing, the regulations describe that during the quote-unquote removal period, the government has certain obligations like trying to obtain travel documents from the country to which the individual is to be removed during the removal period. The government has not undertaken those obligations in this case, simply because the government doesn't have actual authority to remove the individual anywhere. So until the government has authority to remove the individual to some other country outside the United States, the individual is in the United States, and the individual is pending, quote-unquote, a determination on whether the individual is to be, quote, to be removed. How do you handle the statutory provision that says the order, initial order of removal that was instated, is not subject to review? Yes, Your Honor, so Section 1231A. So that's a final order, and what is in place is the Convention Against Torture question, where are we going to defer them, defer, or where are you going to remove them to? But the order of removability is no longer reviewable. Yes, Your Honor, if I may respond to that. Section 1231A.5 does say, as Your Honor suggested, that it's not subject to being reopened, and the individual can be immediately removed. But the Supreme Court in Fernandez-Vargas said quite clearly that an overly literal interpretation of that would conflict with other statutes that Congress has enacted that provide a right to deferral of these individuals. That's the fundamental problem with the government's argument, is that it would undermine what the Supreme Court has said is a right for these individuals to have deferral of removal, notwithstanding Section 1231A.5. The way that the agency has reconciled this process between what Section 1231A.5 says and the separate statute under the Convention Against Torture, which allowed deferral and withholding of removal, is via 8 CFR 208.31a. And what the agency has said is there is a, quote, unquote, a reinstatement process. The reinstatement process begins with the reinstatement of the underlying order of removal. But that process is not final until the withholding-only proceedings conclude. So in the majority of cases, and I can explain some of these statistics if useful, we think it's about 98% of cases, there is no withholding request. In the majority of those cases, the order will be final immediately and the individual will be subject to Section 1231. But in the 2% or so of cases that are the exception, which is our case, there is a longer reinstatement process, and the process is not final until the order concludes. We're confusing some terms here because the order of removal has to be administratively final. The order of removal is administratively final in this case. It cannot be reviewed. What can happen is that under the Convention Against Torture, he can be sent to some other country based on criteria set forth there. But the statute makes very clear that he had a final order of removal that is reinstated. I mean, that was a final judgment, so to speak. And he came back in, and the final judgment is reinstated, and it is administratively final. And A-5 says that is not subject to being reopened or reviewed. That's pretty strong. And so that is administratively final. Now, what happens hereafter is based on the Convention Against Torture statute and to take into account those issues, which are the persecution and so forth. But that doesn't get you back into 1226, which is pre-order of removal detention. Well, Your Honor, in 98% of the cases where there is no withholding-only proceedings, I would agree with you. But in 2% of cases where the reinstatement process does not conclude so quickly, I believe that's incorrect. And I'll also note that here the order of removal that would effectuate the order of Mr. Cressman eventually. But there is not a proceeding reviewing the removal order. But, Your Honor, there was a new removal order in this context. That appears at page JA-21. Because this is not a typical situation, it went to an immigration judge. Ninety-eight percent of reinstate cases don't go to an immigration judge, 2% do. This case went to an immigration judge, and at JA-21, the court entered a new order of removal. I understand your argument. I mean, your basic argument is that he's got some more process based on the Convention Against Torture. Yes, Your Honor. But that does not affect the finality of his removal order or the administratively financial final aspect of that. But, Your Honor, the — And as a consequence, we then have to figure out whether you go back to your suggestion, you go back to 1226, which is pre-removal order, to 1231, which addresses all these issues we're talking about. But, Your Honor, the finality that matters is finality of authority to remove. We think that's the best understanding of 1226. No, I said finality says administratively final. Well, it — And the statute says it's administratively final. But, Your Honor, if I also may additionally, as an alternative argument, point to the fact that the government recognizes that for its argument to be correct, it has to view finality for purposes of appellate review under Section 1252 for the very same proceeding. That's what the statute says. But, Your Honor — You're adding components to it as to how you would like to make it all work out. But it seems to me we ought to start with the language of the statute, shouldn't we? Well, yes, Your Honor. But the government's contention is that the very same proceeding, this withholding-only proceeding, is final now for purposes of detention. But the exact same proceeding is not final until after withholding-only proceeding ends. And our submission is it makes little sense to say that the very same proceeding is final for purposes of detention, yet non-final for purposes of administrative review. The government has conceded that it's non-final for purposes of judicial review under Section 1252. They're bound to that concession because holding otherwise would undermine the statutes, would bring constitutional problems, and it's contrary to what the government  If the government also were correct, that opens an enormous gap under Section 1231a1b, because the triggering events that hold off the removal period are specifically designed such that, first, it's until the proceeding is administratively final. Once it's administratively final, then in order to hold — to stave off a removal period, jurisdiction transfers to this Court for this Court to be able to enter a stay. So the 1252 and 1231 work hand-in-glove necessarily by the triggering events that are contained in Section 1231, and the one triggering event is designed to follow the other. Pursuant to the government's argument, there would be an enormous gap between when the agency acts, this Court would not have jurisdiction. Sotomayor, focusing on the execution of the order. Yes, Your Honor. Well, because we believe that's the proper understanding of what 1226 and 1231. Except the statute focuses on the order itself. But, Your Honor, I don't think it's possible to say that Mr. Crespin or those like them is an individual who is, quote, unquote, to be removed from the United States when the whole proceeding is ongoing. We'll determine whether he is to be removed. The final order that we cannot review, what does it say? Your Honor, what is transpiring now is effectively, I think withholding only is one way to think of it, is effectively is a stay of the order. So there is an order that says, you know, he is removable, but the proceedings now are, can the government execute that order? The withholding only would operate as a stay, which would bar the government from executing that order. Our fundamental position of the way the statutes operate is that the finality of the order determines we're not back. In other words, it's not subject to opening so that we're not pre-order detention under 1226. We're under 1231, which, and it becomes, it talks about order removal becomes administratively final. But, Your Honor, I don't think it makes any sense to say his removal period has begun. When the government can't remove him, they can't do the things that the removal period they're obligated by regulation to do. There may be some other statute, like CAT, which trumps it, but that doesn't change the statute for purposes of detention. But I think it sheds significant light on what is the finality that's at issue between Section 1231 and 1226 when we leave its actual authority to remove. Thank you, Your Honor. We covered it or we got you back? You got six minutes on rebuttal. Yeah. All right. Ms. Nickerson? It's not so clear as I tried to make it out to be. May it please the Court, Theo Nickerson for the government. In 2016, Crespin, an MS-13 gang member and twice convicted felon, illegally re-entered the United States, despite that the government had just completed the lengthy, burdensome, and expensive process of removing him just two years prior. And now he asks this court to treat his detention the same as someone who has never been removed and who may not be removable at all. To do so is not only unfair, it's unsupported by the statute and the clear congressional intent behind it. His arguments essentially put the cart before the horse by suggesting that what statute he's detained under should be determined by his due process right to be free from indefinite detention. But he fails to show how the current system of Zabiras relief is ineffective to protect those due process rights. Instead, the narrow... Well, he's now applied for withholding from his cat. And depending on what the determination is, I take it he can then appeal that. Correct. That decision. And can anything happen to him? Can he be removed before that appeal takes place or if he makes an appeal? The decision on whether the government will remove him and whether it retains the authority to remove him, at all times he remains removable. But as a matter of diplomatic and convention against torture duties, the government will not, for practical reasons, remove him to El Salvador. However, it retains authority at the moment to, in fact, remove him to a third country and he is removable at this point as we speak to any other number of any ties, let alone a reasonable fear of returning to. So the only issue, the singular issue that is pending right now is whether under the convention against torture he's removable to El Salvador. If he's not removable to El Salvador, the statute actually commands DHS to remove him somewhere else. What's wrong with the Second Circuit's opinion holding to the contrary? Well, there's a number of things that the government believes are in error in the Guerra decision. First, it relies on cases that found that withholding only proceedings render the underlying removal order non-final for purposes of judicial review. Now, this circuit in Mejia found that the underlying removal order for an alien in Mejia, just like Crespin, was in withholding only proceedings subject to a reinstated order and the court there found that the underlying removal order retained its finality from the original date for purposes of petitioning for review from that underlying removal order. So here, in order to find that he was detained under 1226, this court would have to essentially read that Mejia did not have a final removal order when it's clear that not only did Mejia have a final removal order, he was detained or sorry, that alien was not detained. Sorry, Your Honor. But that final removal order retained its judicial review finality for purposes of the underlying claim from the original date. But even in the Ninth Circuit where Ortiz Alfaro holds that a final removal order is non-final in withholding only proceedings for judicial review purposes, the reason that they held that is because for practical purposes, there is a concern that is not present here that if it were considered final, the alien would not be able to file for judicial review of the withholding only decision. It would foreclose judicial review of the narrow country-specific relief available in withholding only. Here, that is not at issue. So we hold, so just as Padilla-Ramirez held. There's a distinction between removability and the country to which you're removable. Exactly, Your Honor. And the only issue here is whether it's El Salvador or somebody else. Exactly. But the fact of removability is not at issue. Exactly. There cannot, by the plain text of the statute, there cannot be a decision on a legal right to remain in the United States, and that decision can never, again, be reviewed by any court. So that issue on whether he's to be removed has decidedly been made. And even the statute commands DHS to remove him elsewhere should. It's just the Convention Against Torture, and I guess a similar provision in our statute which entitles him to challenge or to request a country other than El Salvador. Correct. And even if he were to continue to claim protection under the Convention Against Torture and he became indefinitely prolonged detention, he would be no different than the aliens in Zavidas or in Jama who were all held to be detained under 1231. And at that point, if this continued and his due process rights became a concern, he would have the ability to file for habeas relief and say, the government is not going to remove me in the significant likely, it's not significantly likely in the reasonably foreseeable future, so therefore I should be released under Zavidas. And so his due process rights, and even the statute to the extent he quotes the process for removing somebody, to the extent he argues that because we haven't begun, it makes no practical sense for the government to start that procedure while withholding proceedings are ongoing, but that doesn't mean that the removal period hasn't begun. And so the removal itself can't be executed until the withholding procedures are completed. You are correct. However, executability and removability and legal authority to remove are two separate issues. So do we separate when a case is final for detention purposes from final for judicial review? I believe that this court should do as Padilla Ramirez did, and they even declined to follow their own precedent in Ortiz Alfaro, finding that judicial, because those concerns of the ability to petition for review from a withholding decision, because those concerns are inapplicable in a detention context, I think that this court should do as Padilla Ramirez did and distinguish those two things. In addition, Padilla Ramirez, I think, persuasively notes that much of the analysis in GERA had to do with comparing asylum-only proceedings with withholding-only proceedings. However, that is sort of an imprecise comparison because asylum-only is something that happens in an alien's first round of removal proceedings. And I believe in Mejia, this court recognized that Congress had an intent in 1231A5 to treat illegal reentrance differently than first-round removal proceedings and to toe a harder line in those cases. And so, therefore – There's a difference in the two statutes as to whether you get a bond hearing. Exactly. Why is that different? The difference is because the entire intent in enacting the reinstatement provisions, which I would note is located within the post-detention order statute, the entire purpose was to enact an expedited removal process for people who have already been through this. If the court were to find that he is now similarly situated to people who have of that expedited removal process to begin with. Rather, I would submit that the narrow, country-specific relief of withholding-only does not affect the fact that they are still subject to these expedited removal proceedings and 1231 detention where bond hearings become – or release becomes available only under ZADVDAS. Can a withholding claim only be made in instances where the removal order is final? Of course, can you make it before the order is founded? You can, but only in first-round removal proceedings. So here, actually, the IJ did enter a new order of removal, but that was actually reversed by the BIA because that is not supposed to happen here. In reinstatement cases, there is already a final removal order to withhold. But if you are an alien that's going through first-round removal proceedings, you can apply for asylum, withholding, and CAT relief. And in that – Going through the review process? Exactly. And while – and in that – and in those cases where you've never been ordered removed before and you're in your first round of removal proceedings, the IJ does have to enter an order of removal first in order to grant you withholding because there has to be a removal order to withhold. But in withholding only, the final reinstated order is the final order. That will always be the final order. And opposing counsel, frankly, simply incorrect that a new removal order must be issued. That is not the case. Is there an area of the law where we separate final for detention purposes and final for judicial review purposes? Unfortunately, in my 10 years of working for the government, I have only practiced immigration law. And so this is the only area that I'm familiar with, Your Honor. But you don't know of any other area in your research when you try to compare cases with it where you find the same thing? No, not in any other areas of immigration law am I aware that we separate. However, I think there's really good reason to separate, and I would point to just that congressional intent that for detention purposes, this class of illegal re-entrants who have already been removed would be treated differently than people who have never been ordered removed. Is this the type of case where if we found there was some ambiguity here, it was way in the favor of the appellant? In other words, we thought the statutes were rather ambiguous. If there was, I'm just saying. Would that weigh in the favor, the ambiguity? Would it be construed in the favor of the appellant? No, Your Honor. I believe that the opposite is true. I believe that if it were ambiguous, that the court is to give deference to the government's reasonable interpretations of the statute in its regulations. Chevron deference? That's Chevron deference. We would argue that it is unambiguous by the plain meaning of the text. There is no decision on whether he is to be removed. But if it were ambiguous, that the government's regulations at 248.1 should be accorded deference. Do you know what percentage of the time we were able to find a country willing to take someone for whom withholding has been granted? It is rare, and it's a diplomatic procedure. And it involves a lot of just, you know, different treaties and interacting with different countries. And I'm not sure how often that actually happens as a matter of law. How often? What happens? Removal to a third-party country. You don't know if it's rare or normal? I believe that it is rare to be removed to a third-party country. It's also rare to be able to complete the process of establishing a withholding claim and then be removed to a third-party country. I believe that is a rare occurrence. But I don't think that that changes the issue that under the law and under the statute they are removable and have been ordered removed and they will never be granted any right to remain in the United States. If that option was not there, to remove to a third country, would your argument be the same? Yes. Yes, Your Honor, it would be. Because I believe that the statute— Has Mexico been taking any of these immigrants from El Salvador who have been fleeing the gangs? Actually, this gentleman is a little different. He was actually a member of a gang, which makes it pretty tough. Not very many countries are going to want to accept him. That is correct. But I would just point to the Supreme Court's cases. Is it correct that Mexico has been taking them? No, it's correct that it would probably be difficult, given his criminal history, to get a third-party country to agree to take him. But I would submit that that's not the issue because even in JAMA, where his own country was refusing to take him, or in Zavidas when we had two aliens kind of in that removable but unremovable limbo, even in those cases, while those country-specific decisions were being made, those aliens were still detained under 1231. It didn't change the legal authority we had to detain them. But as I understood you, you said the fact that he could be removed to a third country is not germane at all to your argument as to whether it's final here. I believe that is a correct interpretation of my argument, that those actually are two completely separate issues. Whether his final removal order is executable, will be executed, to where it gets executed, does not determine what statute he's detained under. The only thing that should dictate what statute he's detained under is whether the order is administratively final. And I think the statute is clear when it says that there's no review and there's no further relief, that that's an administratively final order. Matt, just to play this out as a matter of maybe curiosity. This proceeding goes through and he's detained. No country will take him. Six months have passed. Does he get released then? At that point, at six months, he would have... Presumption. Exactly. The presumption of reasonableness for the government will have ended, and there's a fairly likely chance that he could succeed on a Zabidas habeas at that point. How long has it been now? It has been a little bit over a year, I believe 14 months. And so... Where is his case now? Now his case is before the Board of Immigration Appeals. So it went back to the immigration judge, and now it has gone to the Board of Immigration Appeals and it has been fully briefed. Last time the board took only four months to decide, so it's now pending before the board on that narrow issue of removal to El Salvador. So the government would argue that under a Zabidas analysis, that the fact that it has now gone up to the board yet again and is on appeal fully briefed would lend towards a finding that it is likely, in the reasonably foreseeable future, that that issue will be decided. And that would include also judicial proceedings following the board, right? Following what? Excuse me. If the board ruled against him, he would still have a right to appeal that, wouldn't he? Yes, he could petition that for review. And so the government would still make the same point that the process is ongoing, there's still the exception to the six-month presumption. That's what my hypothetical was. When all the process is finished and we're finished, at that point he could bring a habeas, I suppose, and you wouldn't have much to say at that point. At any point he could bring a habeas. The district court was clear that as soon as it was dismissed without prejudice and as soon as circumstances should change, he could bring another Zabidas. He never brought a Zabidas claim in this case, but he could bring a claim under Zabidas, even if the board were to take a long time. Or if it were to go up on petition for review, he could be released under Zabidas. If process is going, ordinary process. I mean, he's before the board, he's going to be coming before the Fourth Circuit or whatever. Right. And that process is in place. Exactly. Our court happens to be the quickest in the country from notice of appeal to resolution. That doesn't mean we're always fast. And even if you were not as fast as you normally are, if he could show that there wasn't a reasonably likely removal in the foreseeable future, he would be entitled to release. If the board, the BIA, ruled in his favor on withholding, would he be released at that time? Or will he remain in detention pending the review, assuming there will be a release? Well, it would depend, I guess, if the government appealed or if the BIA granted him relief, if the government appealed. But if the government did not appeal— If the government appeals, he stays in detention, you're saying? Correct, unless he succeeds on a Zabitows claim. It's a little bit of a problem for a sovereign country like the United States to be forced to receive a gang member who has been deported. Exactly. Snakes back in and then finds a way to stay here forever. Exactly. And interestingly, the first time that he was deported, it was due to a criminal cocaine conviction under 1226C. So he had no eligibility for a bond hearing. So in essence, if you were to hold that he's pre-order 1226A, he would be gaining more rights to be free from detention than he had in his original removal proceedings by virtue of leaving and coming straight back in. And in addition, he never applied for withholding of removal. He had an opportunity to challenge his removal in the first round of removal proceedings. He never applied for withholding of removal. He simply accepted the judge's order, left, and came right back. And so I think Congress has been clear that those types of illegal re-entrants are not subject to pre-final orders. So I would also just like to clarify a few points. Again, there's no new removal order in withholding only proceedings. There's no need to amend a prior order. In fact, the regulations actually make clear that the removal order, although it contains a specific country, it does not limit DHS from executing it to a third country. And so also the regulation that opposing counsel pointed to. Your argument is that this is another layer of relief under CAT, which adds to a pre-existing judgment. So the pre-existing judgment, so to speak, says he's deportable to El Salvador, but he does have rights under CAT, which he can exhaust and which might give him an opportunity to execute that order to another country. Right. And the rights that were created by the CAT in withholding only do not change what detention statute he's detained under or give him more relief to be free from detention. Yeah, so for many of these cases, the court should decline to conflate authority to execute with authority to remove. And many of the cases. You see the red light. You went through the red light, you know. Oh, it says 105. Excuse me. That's 105 past red. Oh, I apologize. That's not a serious violation. I apologize. It could become one. I apologize. I apologize sincerely. I will sum up. Have we covered everything? We have. Thank you, Your Honors. Have a great day. Thank you. All right. Mr. Hughes. Thank you, Your Honor. The distinction between 1226 and 1231 turns on actual authority to execute the removal order. Now, as the government just discussed, they don't currently have. Well, you can say that and you can argue that, but you can't state that's what the statute says. But I believe, Your Honor, that's our fundamental interpretation. And if we're right about that, then we win this case. If we're wrong about that, we have a harder time. I agree with that. But that's the proper interpretation of 1226 and 1231. And to restate, there are a few reasons. First, until the government can execute the order of removal, it makes no sense to describe one as being somebody who is, quote-unquote, to be removed. You know, you take this, if you really want to get a very good analogy, and it's an apropos, I believe, you can look in the civil rules. You can get a final judgment, and it will be final and unappealable. Then you have execution of the judgment, and you can't execute against this house because it happens to be owned by not only the defendant but third party. And so you can object to that, and you can have whole proceeding. But that doesn't affect the finality of the judgment. We're talking about the execution of the judgment here, and the judgment says he goes to El Salvador. You can come in by reason of a separate statute and say, he doesn't go to El Salvador, he wants to go somewhere else. And that's what you're doing now. But that doesn't change the final judgment that removed him. But a few things about that, Your Honor. First, 1226 does not talk about in terms of judgments. It talks about the actual. I understand. I was giving you an analogy. I understand that, Your Honor. But just about these statutes, 1226 doesn't talk about judgments. It talks about people who are in reality to be removed or not to be removed. Mr. Crespin is not somebody who is to be removed until the government has authority to execute that removal order. The government acknowledges that they lack that authority, and if he prevails in withholding only, the government says it's rare they ever will have that authority. Now, turning to Section 1231, 1231 also describes that detention, that kind of detention, applies during the removal period. Congress envisioned that it would typically last no more than 90 days because that's the period of time that Congress envisioned that the agency needed to actually complete the physical process of removal, obtaining the travel documents, obtaining travel arrangements, doing those physical things. Now, as Judge Wynn noted, the purpose of 1231 without a bond hearing is because those individuals are in the process of being physically removed from the United States. That's why there's no bond hearing requirement. The reason for it is the same reason in the criminal law. Pre-trial detention, the person has not been convicted, and so we have a higher standard for detaining him. He has to get bond in a bunch of circumstances. Once he's convicted, all those criteria change. Now it's harder to get a bond to get out because he's been convicted. This gentleman's been removed by a final order that's not reviewable, and so now he is a higher risk, and therefore 1231, which doesn't have a bond provision, kicks in. If you give him a bond provision, that's treating him the same as every pre-trial. A few things. I mean, I don't think that analogy is directly apt because we're looking to the statutory text. But second, if there's any – That's what the judge says. On his face. Pending a removal order. Well, Your Honor, also, if there is any view that there is a higher risk with this individual given his circumstance, that's something that's taken into account in the individualized bond hearing by the immigration judge. Immigration judges – I'm explaining to you, giving you a pretty clear analogy as to why there's a bond provision in 1226 and not in 1231. I think, Your Honor, the sensible reading of the statute because of the 90-day limitation period and also because the statute says on its face that's the period during which the government shall remove the individual, that it's designed for the period when the individual is actually going to be taken out of the country. That does not apply now because the government, as it concedes, does not have authority to actually take this person out of the United States. Now, 98 percent of reinstatement cases, as we said, that won't be the case. That's why 1231A5 is located in Section 1231. In the normal case, the government does have immediate authority, so Section 1231 detention without the ability for bond hearing would apply. In the exceptional case where that's not the case, where the proceedings are to precisely determine whether or not an individual is, quote, to be removed from the United States, that natural reading is that Section 1226 applies, not Section 1231. Section 1231 deals with something else entirely. It also, as we've said, makes no sense from a statutory perspective to view the very same proceeding as final for one purpose for appeal but final for a different purpose for purposes of detention. And we think the best way to understand finality is that reinstatement is a process. In most cases, that process is final very quickly, but in the exception when there's a reinstatement process,  it is not final until after the withholding-only proceedings conclude. And then finally, as to the removal order that's actually relevant, in this case, the immigration judge did issue a new order of removal. That's at JA-21. That was never reversed by the BIA. That is the basis on which this individual would be removed if he's removed from the United States, not the underlying reinstated order under 1231A5. That's because, again, in this 2 percent of cases, a different procedure accords, and there's a new order of removal that's issued by the IJ. That's exactly what happened. It's never been reversed. It makes sense to conclude that that is final when withholding-only is final. Was there an order reinstating the previous order of removal? There was an order reinstating. Where is that? That order is at JA-62. And who entered that order? That was issued by a DHS officer. But, again, as I said, 98 percent of cases, that will be the end of the story. In 2 percent of cases, when there's withholding-only, that's not the end of the story, and that's the case we have here. Point to the applicability of these things as to how many people fit into categories. I'm trying to find out the fact of the matter. And in this case, you're saying there was the previous order of removal was reinstated. Yes, Your Honor. But as the regulations describe, there's a reinstatement process, and that process, when there's withholding-only proceeding, is not over immediately. Was there an order entered reinstating the previous order? There is, but that started the reinstatement process, and the issue is final when the reinstatement process has concluded. I see my time has expired. Thank you, Your Honor. All right. We'll adjourn court for the day, come down and greet counsel. And before we come down, I do want to admonish the class from William & Mary not to grade us until the opinions are out, because they may be different from what you might have expected and maybe attain a higher grade than what we performed today. We'll come down and greet counsel.
judges: Paul V. Niemeyer, William B. Traxler, Jr., James A. Wynn, Jr.